# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MIDWEST BANC HOLDINGS, INC.,[1] | ) | Case No. 10-37319 |
| | ) | |
| Debtor. | ) | Judge A. Benjamin Goldgar |

## JOINT PLAN OF LIQUIDATION DATED DECEMBER 20, 2010

The above-captioned debtor and debtor-in-possession (the "*Debtor*") and the Official Committee of Unsecured Creditors (the "*Committee*"), hereby submit this Joint Plan of Liquidation (the "*Plan*") pursuant to section 1123 of the Bankruptcy Code:

## ARTICLE I

## Definitions

The following terms, when used in the Plan shall, unless the context otherwise requires, have the following meanings, respectively:

1.1     "**Administrative Claim**" shall mean a Claim of a Creditor of the kind specified in section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, and shall include:  (i) any actual and necessary costs and expenses incurred by the Debtor after the Petition Date with respect to preserving the Estate and operating the Debtor's business; (ii) any Professional Fee Claims approved by the Bankruptcy Court pursuant to section 330 of the Bankruptcy Code; and (iii) all fees and charges properly assessed against the Estate pursuant to 28 U.S.C. § 1930.

1.2     "**Allowed Claim**" or "**Allowed . . . Claim**" shall mean a Claim, proof of which is filed within the time fixed by the Bankruptcy Court, or that has been, or is hereafter, scheduled by the Debtor as liquidated in amount and not disputed or contingent, and to which no objection to allowance thereof has been raised by the Debtor or the Creditor Trustee or filed within any applicable period fixed by the Bankruptcy Court, or as to which a Final Order allowing such Claim has been entered.

1.3     "**Avoidance Action**" shall mean causes of action against Persons arising under sections 502, 510, 541, 542, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws,

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of the Debtor's tax identification number is Midwest Banc Holdings, Inc. (2484).  The service address for the Debtor is 54 South Washington Street, Suite 1, Hinsdale, Illinois 60521-4161.

121272571v5  0913730  54169

whether or not litigation is commenced before or after the Effective Date to prosecute such Avoidance Actions.

1.4     "**Bankruptcy Code**" shall mean Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

1.5     "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, located in Chicago, Illinois, or any court having jurisdiction over this Case or a proceeding arising in, or arising under or related to this Case.

1.6     "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect.

1.7     "**Case**" shall mean the case commenced under chapter 11 of the Bankruptcy Code by the Debtor on the Petition Date, styled *In re Midwest Banc Holdings, Inc.*, Case No. 10-37319, currently pending before the Bankruptcy Court.

1.8     "**Cash**" shall mean legal tender of the United States of America and equivalents thereof.

1.9     "**Causes of Action**" shall mean all claims and causes of action now owned or hereafter acquired by the Debtor, whether arising under any contract, the Bankruptcy Code, or other federal or state law, including, but not limited to, all litigation pending as of the Confirmation Date in any jurisdiction in which the Debtor is a plaintiff, defendant or other party, and all other adversary proceedings and lawsuits.

1.10     "**Claim**" shall mean any right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined by section 101(5) of the Bankruptcy Code.

1.11     "**Class**" shall mean a class of holders of Claims as described in the Plan.

1.12     "**Committee**" shall mean the Official Committee of Unsecured Creditors appointed in this Case on September 28, 2010, pursuant to section 1102 of the Bankruptcy Code.

1.13     "**Confirmation Date**" shall mean the date of entry of the Confirmation Order.

1.14     "**Confirmation Order**" shall mean the order confirming this Plan.

1.15     "**Creditors**" shall mean all creditors of the Debtor holding Claims for debts, liabilities, demands or other Claims of any character whatsoever.

1.16     "**Creditor Trust**" shall mean a common law trust to be established pursuant to the Plan, the Creditor Trust Agreement and the Confirmation Order for the sole and exclusive benefit of the holders of Allowed Class 3 and 4 Claims.  The Creditor Trust shall liquidate and distribute the Creditor Trust Assets, in accordance with the Creditor Trust Agreement.

121272571v5  0913730  54169

1.17    "**Creditor Trust Agreement**" shall mean the agreement to be executed as soon as reasonably practicable after the Confirmation Date, in a form substantially similar to the Creditor Trust Agreement attached hereto as **Exhibit A**, among the Debtor, the Committee and the Creditor Trustee, which shall govern the obligations of the Creditor Trustee with respect to oversight of the distribution of the Net Proceeds of the Creditor Trust Assets, as further set forth in the Creditor Trust Agreement and the Plan.

1.18    "**Creditor Trust Assets**" shall mean those assets to be transferred to and vested in the Creditor Trust pursuant to this Plan and the Confirmation Order, plus all proceeds, earnings and replacements arising from or relating to these assets and all assets acquired by the Creditor Trust at any time.  Except to the extent specifically excluded, the Creditor Trust Assets shall include:  (i) all Cash held by the Debtor (less any Cash paid or to be paid on account of unpaid Allowed Professional Fee Claims); (ii) the North Roselle Property; (iii) 40,000 shares of common stock in Western Illinois Bancshares, Inc.; (iv) the Debtor's interest in Stieven Financial Investors, L.P.; (v) the Debtor's remaining property, including furniture, fixtures, investments, refunds, accounts, any other tangible or intangible personal property and any and all proceeds thereof; (vi) the Debtor's outstanding accounts receivable; and (vii) the Net Proceeds from any Avoidance Actions or Miscellaneous Causes of Action engaged in by the Creditor Trust.  Notwithstanding the foregoing, in the event that M&I elects to enter into the M&I Settlement, the Creditor Trust Assets shall not include the RAC Tax Refund.

1.19    "**Creditor Trustee**" shall mean such Person or entity, including any replacements thereof or successors thereto, as may be designated by the Plan Proponents at least three (3) days in advance of the Joint Hearing, and approved by the Bankruptcy Court, as necessary or appropriate, to serve as custodian for the Creditor Trust and to oversee the liquidation and distribution of the Creditor Trust Assets held therein for the benefit of the holders of Allowed Class 3 and 4 Claims pursuant to the Plan, the Confirmation Order and the Creditor Trust Agreement.

1.20    "**Cure Amount Claim**" shall mean a Claim in an amount necessary to cure the Debtor's defaults under an executory contract or unexpired lease at the time such contract or lease is assumed by the Debtor under section 365 of the Bankruptcy Code to the extent required by section 365 of the Bankruptcy Code.

1.21    "**Debtor**" shall mean Midwest Banc Holdings, Inc.

1.22    "**Deficiency Claim**" shall mean any General Unsecured Claim of a Creditor against the Debtor equal to the excess of the Allowed amount of the Creditor's asserted Claim over the value of such Creditor's interest in the Debtor's interest in the property securing such Claim, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.23    "**Disclosure Statement**" shall mean the Disclosure Statement filed by the Plan Proponents and approved by the Bankruptcy Court.

1.24    "**Disputed Claim**" shall mean any Claim (other than an Allowed Claim) that is either a Claim that has been scheduled by the Debtor or a Claim which is the subject of a proof of claim which has been filed with the Bankruptcy Court, as to which the Debtor, the Committee

3

or the Creditor Trustee have indicated a dispute, or as to which scheduled or filed Claim a timely objection to the allowance thereof has been filed by a party entitled to make such an objection, but as to which the Bankruptcy Court has not yet entered a Final Order.

1.25    "**Distributing Party**" shall mean the party obligated to make any distribution permitted or required under the Plan, whether the Debtor or the Creditor Trustee.

1.26    "**Effective Date**" shall mean a date not greater than forty-five (45) days after the Confirmation Date, unless extended by the Creditor Trustee in his or her sole discretion; provided, however, that if a stay of the Confirmation Order is in effect on such day, then the Effective Date shall be the first day thereafter on which, if the Confirmation Order has not been vacated, no stay of the Confirmation Order is in effect.

1.27    "**Equity Security**" shall have the meaning provided by section 101(16) of the Bankruptcy Code.

1.28    "**Equity Security Holder**" shall have the meaning provided by section 101(17) of the Bankruptcy Code.

1.29    "**Estate**" shall mean the estate of the Debtor created in this Case pursuant to section 541 of the Bankruptcy Code.

1.30    "**Final Order**" shall mean an order or judgment as to which the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending.

1.31    "**General Unsecured Claim**" shall mean any Unsecured Claim, arising prior to the Petition Date, that is not a Professional Fee Claim, Other Administrative Expense Claim, Unsecured Priority Tax Claim, Class 1 Claim, Class 2 Claim, Class 4 Claim or Class 5 Interest.

1.32    "**Impaired**" shall mean any Class, or any Claim or Interest in a Class, that is impaired within the meaning of section 1124 of the Bankruptcy Code, and shall include, without limitation, Classes 2, 3, 4 and 5.

1.33    "**Interest**" shall mean the legal, equitable, contractual and other rights of the holders of any Equity Security in the Debtor, including the rights of any entity to purchase or demand the issuance of any Equity Securities, including:  (i) conversion, exchange, voting, participation and dividend rights; (ii) liquidation preferences; (iii) stock options, warrants and put rights; and (iv) share-appreciation rights.

1.34    "**Joint Hearing**" shall mean the date on which the Bankruptcy Court holds a hearing to consider approval of the Disclosure Statement and confirmation of this Plan.

1.35    "**Lien**" shall have the meaning provided by section 101(37) of the Bankruptcy Code.

1.36    "**M&I**" shall mean M&I Marshall & Ilsley Bank and all of its affiliates and subsidiaries.

4

1.37   "**M&I Notes**" shall mean the M&I Revolving Note and the M&I Term Note, collectively.

1.38   "**M&I Revolving Note**" shall mean that certain Promissory Note dated March 24, 2006, in the original amount of $50,000,000, as amended from time to time.

1.39   "**M&I Subordinated Note**" shall mean that certain Subordinated Term Note dated March 31, 2008, in the original amount of $15,000,000.00.

1.40   "**M&I Term Note**" shall mean that certain Promissory Note dated September 28, 2007, in the original principal amount of $75,000,000, as amended from time to time.

1.41   "**MBHI III**" shall mean MBHI Capital Trust III, a Delaware statutory trust sponsored by the Debtor pursuant to that certain Trust Agreement dated December 17, 2003.

1.42   "**MBHI III Indenture**" shall mean that certain Junior Subordinated Indenture dated December 19, 2003, pursuant to which MBHI III issued the MBHI III Notes.

1.43   "**MBHI III Notes**" shall mean those certain junior subordinated deferrable interest notes in the face amount of $9,279,000.00 issued pursuant to the MBHI III Indenture.

1.44   "**MBHI III Trustee**" shall mean Deutsche Bank Trust Co. Delaware, in its capacity as trustee of MBHI III.

1.45   "**MBHI IV**" shall mean MBHI Capital Trust IV, a Delaware statutory trust sponsored by the Debtor pursuant to that certain Declaration of Trust dated December 12, 2003.

1.46   "**MBHI IV Indenture**" shall mean that certain Indenture dated December 19, 2003, pursuant to which MBHI IV issued the MBHI IV Securities.

1.47   "**MBHI IV Securities**" shall mean those certain Floating Rate Junior Subordinated Debt Securities in the face amount of $10,310,000.00 issued pursuant to the MBHI IV Indenture.

1.48   "**MBHI IV Trustee**" shall mean Wilmington Trust Company, in its capacity as trustee of MBHI IV.

1.49   "**MBHI V**" shall mean MBHI Capital Trust V, a Delaware statutory trust sponsored by the Debtor pursuant to that certain Declaration of Trust dated May 24, 2005.

1.50   "**MBHI V Indenture**" shall mean that certain Indenture dated June 7, 2005, pursuant to which MBHI V issued the MBHI V Debentures.

1.51   "**MBHI V Debentures**" shall mean those certain Floating Rate Junior Subordinated Deferrable Interest Debentures in the face amount of $20,620,000.00 issued pursuant to the MBHI V Indenture.

1.52    "**MBHI V Trustee**" shall mean Wilmington Trust Company, in its capacity as trustee of MBHI V.

1.53    "**MBTC**" shall mean the Debtor's wholly-owned subsidiary, Midwest Bank and Trust Company.

1.54    "**Miscellaneous Causes of Action**" shall mean all Causes of Action other than Avoidance Actions.

1.55    "**Net Proceeds**" shall mean the Cash proceeds received by the Creditor Trustee from time to time from the sale or other disposition of the Creditor Trust Assets, net of the reasonable or necessary costs of such sale or other disposition, including reasonable fees and expenses of the Creditor Trustee's legal counsel and other Professionals incurred in connection therewith.

1.56    "**North Roselle Property**" shall mean the Debtor's real property located at 505 North Roselle Road, Roselle, Illinois.

1.57    "**NSB**" shall mean Northwest Suburban Bancorp, Inc., a Delaware corporation that merged with the Debtor under that certain Agreement and Plan of Merger dated March 22, 2007.

1.58    "**NSB Merger**" shall mean the merger effected under the March 22, 2007 Agreement and Plan of Merger between the Debtor and NSB.

1.59    "**NST**" shall mean Northwest Suburban Capital Trust I, a Delaware statutory trust sponsored by NSB pursuant to that certain Declaration of Trust dated May 14, 2004.

1.60    "**NST Debt Securities**" shall mean those certain Junior Subordinated Debt Securities in the face amount of $10,310,000.00 issued pursuant to the NST Indenture.

1.61    "**NST Indenture**" shall mean that certain Indenture dated May 18, 2004, pursuant to which NST issued the NST Debt Securities.  In connection with the NSB Merger, the Debtor and the NST Trustee entered into a Supplemental Indenture dated October 1, 2007, pursuant to which the Debtor assumed substantially all of NST's obligations to the NST Trustee.

1.62    "**NST Trustee**" shall mean Chase Manhattan Bank USA, National Association, in its capacity as trustee of NST.

1.63    "**Other Administrative Expense Claim**" shall mean an Administrative Claim that is not a Professional Fee Claim.

1.64    "**Person**" shall mean an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

1.65    "**Petition Date**" shall mean the date of the filing of the Debtor's Case, or August 20, 2010.

121272571v5  0913730  54169

1.66   "**Plan**" shall mean this Joint Plan of Liquidation as set forth herein or as it may be modified or amended.

1.67   "**Plan Proponents**" shall mean the Debtor and the Committee.

1.68   "**Priority Claim**" shall mean a Claim, other than an Administrative Claim or Priority Tax Claim, that is entitled to priority in payment under section 507(a) of the Bankruptcy Code.  With respect to the Claims of employees or former employees, such Claims shall constitute Priority Claims only to the extent permissible under sections 507(a)(4) and (a)(5) of the Bankruptcy Code or prior order of the Bankruptcy Court.

1.69   "**Priority Tax Claims**" shall mean a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.70   "**Professional Fee Claims**" shall mean Claims of Professional Persons for compensation for services rendered in this Case prior to the Confirmation Date pursuant to sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

1.71   "**Professional**" or "**Professional Persons**" shall mean Persons, including attorneys, accountants and financial advisors retained by the Debtor, the Committee or the Creditor Trustee, or to be compensated pursuant to sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

1.72   "**Pro Rata**" shall mean proportionately so that the ratio of the amount of the distribution made on account of a particular Allowed Claim to the distribution made on account of all Allowed Claims of the Class in which the particular Allowed Claim is included is the same as the ratio of the amount a particular Allowed Claim to the total amount of the Allowed Claims of the Class of which a particular Allowed Claim is included.

1.73   "**RAC**" shall mean Royal American Corporation, a Delaware corporation that merged with the Debtor pursuant to the RAC Merger.

1.74   "**RAC Indenture**" shall mean that certain Indenture dated April 30, 2004, pursuant to which RAC issued the RCT Debt Securities.  In connection with the RAC Merger, the Debtor and RCT entered into a Supplemental Indenture dated June 30, 2006, pursuant to which the Debtor assumed substantially all of RAC's obligations to the RCT Trustee.

1.75   "**RAC Merger**" shall mean the merger effected under the February 8, 2006 Agreement and Plan of Merger between the Debtor and RAC.

1.76   "**RAC Tax Refund**" shall mean the federal income tax refund owing on account of the amended 2004 federal income tax return filed with respect to the Debtor's predecessor RAC.

1.77   "**RCT**" shall mean Royal Capital Trust I, a Delaware statutory trust sponsored by RAC pursuant to that certain Declaration of Trust dated April 20, 2004.

121272571v5  0913730  54169

1.78    "**RCT Debt Securities**" shall mean those certain Junior Subordinated Debt Securities in the face amount of $10,310,000.00 issued pursuant to the RAC Indenture.

1.79    "**RCT Trustee**" shall mean Chase Manhattan Bank USA, National Association, in its capacity as trustee of RCT.

1.80    "**Secured Claim**" shall mean a Claim of a Creditor secured by a lien on property of the Estate, or a Claim subject to set off under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in property of the Estate, or to the extent of the amount subject to set off, as the case may be.

1.81    "**Secured Creditor**" shall mean the holder of a Secured Claim.

1.82    "**Trust Interests**" shall mean the beneficial interests in the Creditor Trust.

1.83    "**Trustee's Expenses**" shall mean the reasonable fees, costs and expenses incurred by the Creditor Trustee and any Professionals retained by it in connection with the performance of its duties and responsibilities under the Plan and Creditor Trust Agreement, as well as any other reasonable and necessary costs of administration of the Creditor Trust, including U.S. Trustee fees incurred during the post-Confirmation Date period, which may be paid from the Creditor Trust Assets.

1.84    "**Unsecured Claim**" shall mean a Claim of a Creditor not secured by a Lien on property of the Estate and not entitled to be classified as a Priority Claim pursuant to section 507 of the Bankruptcy Code.

1.85    "**U.S. Trustee**" shall mean the United States Trustee.

**Rules of Interpretation and Computation of Time.**  For purposes of this Plan, unless otherwise provided herein:  (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (ii) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (iv) any reference to any entity as a holder of a Claim or Interest includes the entity's successors and assigns; (v) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (vi) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (viii) the rules of construction set forth in section 102 of the Bankruptcy Code will apply; and (ix) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

121272571v5  0913730  54169

## ARTICLE II

### Unclassified Claims

Section 1123(a)(1) of the Bankruptcy Code provides that Administrative Claims and Priority Tax Claims are not to be classified under the Plan.

2.1    **Allowed Administrative Claims** include the following:

    2.1.1    **Allowed Administrative Claims of any Professional Person** shall include Allowed Professional Fee Claims.

    2.1.2    **Allowed Other Administrative Expense Claims** shall include the Allowed Administrative Claims of parties other than Professional Persons.

2.2    **Priority Tax Claims** shall include the Allowed unsecured Priority Tax Claims.

## ARTICLE III

### Designation of Classified Claims and Interests

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Claims and Interests are classified as follows:

3.1    **Class 1 Claims** shall consist of all Allowed unsecured Priority Claims (other than unsecured Priority Tax Claims).

3.2    **Class 2 Claims** shall consist of the Allowed Secured Claims of M&I with respect to the M&I Notes that are secured to the extent of the value in the underlying collateral securing the Class 2 Claims.

3.3    **Class 3 Claims** shall consist of all Allowed General Unsecured Claims, including M&I's Deficiency Claim with respect to the M&I Notes.  M&I's Deficiency Claim has been waived in its entirety by agreement between M&I and the Plan Proponents.

3.4    **Class 4 Claims** shall consist of:  (i) the Allowed Claims of the RCT Trustee with respect to the RCT Debt Securities; (ii) the Allowed Claims of the NST Trustee with respect to

121272571v5  0913730  54169

the NST Debt Securities; (iii) the Allowed Claims of the MBHI III Trustee with respect to the MBHI III Notes; (iv) the Allowed Claims of the MBHI IV Trustee with respect to the MBHI IV Securities; (v) the Allowed Claims of the MBHI V Trustee with respect to the MBHI V Debentures; and (vi) the Allowed Claims of M&I with respect to the M&I Subordinated Note.

    3.5    **Class 5 Interests** shall consist of the Interests of Equity Security Holders.

## ARTICLE IV

## Impairment of Classes

    4.1    **Impaired Classes of Claims Entitled To Vote.**  Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan, Class 2, Class 3 and Class 4 are Impaired, and holders of Claims in those Classes shall be entitled to vote to accept or reject this Plan.

    4.2    **Classes Deemed To Accept the Plan.**  Class 1 Claims are unimpaired by this Plan and holders of such Claims are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  The votes of Creditors holding these Claims will therefore not be solicited.

    4.3    **Classes Deemed To Reject the Plan.**  Holders of Interests in Class 5 will not receive or retain any distribution under the Plan on account of their Interests.  Pursuant to section 1126(g) of the Bankruptcy Code, Class 5 is Impaired and is conclusively presumed to have rejected this Plan, and the votes of holders of Class 5 Interests therefore will not be solicited.

    4.4    **Cram Down.**  The Plan Proponents will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code with respect to any Class that rejects the Plan.

121272571v5  0913730  54169

## ARTICLE V

### Treatment of Claims and Interests

5.1    **Allowed Professional Fee Claims.**  The Distributing Party shall pay Allowed Professional Fee Claims in full and in Cash within ten (10) days of such Claims becoming Allowed Professional Fee Claims pursuant to Section 7.6 herein.

5.2    **Allowed Other Administrative Expense Claims.**  The Distributing Party shall pay Allowed Other Administrative Expense Claims in full and in Cash on the later of:  (i) as soon as practicable following the Effective Date; (ii) thirty (30) days after such Claims become Allowed Other Administrative Expense Claims; (iii) the date upon which such Allowed Other Administrative Expense Claims become due in the ordinary course of business; and (iv) such other time as may be agreed to by the Distributing Party and the holder of the Allowed Other Administrative Expense Claim.  Creditors seeking payment on Other Administrative Expense Claims shall have thirty (30) days from the Effective Date to file an application with the Bankruptcy Court with respect to Other Administrative Expense Claims, or such Claims will be forever barred.

5.3    **Priority Tax Claims.**  The Distributing Party shall pay Allowed Priority Tax Claims in full and in Cash on the later of:  (i) as soon as practicable following the Effective Date; (ii) thirty (30) days after such Claims become Allowed Priority Tax Claims; and (iii) such other time as may be agreed to by the Distributing Party and the holder of the Allowed Priority Tax Claim, in accordance with sections 507(a)(8) and 1129(a)(9)(C) of the Bankruptcy Code.

5.4    **Class 1 Claims.**  The Distributing Party shall pay Allowed Class 1 Priority Claims in full and in Cash on the later of:  (i) as soon as practicable following the Effective Date; (ii) thirty (30) days after such Claims become Allowed Priority Claims; and (iii) such other time

11

as may be agreed to by the Distributing Party and the holder of the Allowed Class 1 Priority Claim.

    5.5    **Class 2 Claims.**

    5.5.1    M&I may elect to enter into a settlement agreement under which, in full and final satisfaction of the Class 2 Claim, on the Effective Date, the Debtor will deliver to M&I: (i) a general release on behalf of the Debtor, the Estate and any successor to either of all claims and causes of action, including, but not limited to, Avoidance Actions; and (ii) such documents and instruments as are reasonably necessary or appropriate to ratify and effect the assignment of all of the Debtor's rights with respect to tax refunds, including but not limited to the RAC Tax Refund.  In exchange for the treatment described in this Section 5.5.1 of the Plan, M&I will waive any further rights arising out of or related to the Class 2 Claim, including, but not limited to, its right to assert a Deficiency Claim.  Confirmation of the Plan will operate as approval of the compromise and settlement described in the Plan (the "*M&I Settlement*") pursuant to Bankruptcy Rule 9019.

    5.5.2    M&I may forego the M&I Settlement, in which case it is anticipated that the Creditor Trustee would seek avoidance of M&I's security interest in the RAC Tax Refund and investigate any potential Causes of Action and grounds for objection to M&I's Claims.

    5.5.3    M&I's election to enter into the M&I Settlement must be made in writing delivered to counsel for the Plan Proponents not later than the day that is ten days before the Joint Hearing.

    5.6    **Class 3 Claims.**

    5.6.1    Allowed Class 3 Claims shall be paid Pro Rata in accordance with the Creditor Trust Agreement and this Plan.  In accordance with the Creditor Trust Agreement, on

121272571v5  0913730  54169

the Effective Date, each Allowed Class 3 Claim will be converted into a Trust Interest representing such holder's Pro Rata share of the total Trust Interests.  The Debtor shall transfer the Creditor Trust Assets to the Creditor Trustee no later than seven (7) days after the Effective Date.  The Creditor Trustee shall liquidate the Creditor Trust Assets and distribute the Net Proceeds in accordance with this Plan and the Creditor Trust Agreement.

5.6.2   Pro Rata distributions of the Net Proceeds from the Creditor Trust shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Trust Interests from time to time on dates determined by the Creditor Trustee, within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to:  (i) make a Pro Rata distribution on account of Disputed Claims that will be converted into Trust Interests if Allowed; and (ii) pay the Trustee's Expenses in full.

5.7   **Class 4 Claims.**

5.7.1   Allowed Class 4 Claims shall be paid Pro Rata in accordance with the Creditor Trust Agreement and this Plan.  In accordance with the Creditor Trust Agreement, on the Effective Date, each Allowed Class 4 Claim will be converted into a Trust Interest, representing such holder's Pro Rata share of the total Trust Interests.  The Debtor shall transfer the Creditor Trust Assets to the Creditor Trustee no later than seven (7) days after the Effective Date.  The Creditor Trustee shall liquidate the Creditor Trust Assets and distribute the Net Proceeds in accordance with this Plan and the Creditor Trust Agreement.

5.7.2   Pro Rata distributions of the Net Proceeds from the Creditor Trust shall be made by the Creditor Trustee in accordance with the Creditor Trust Agreement to the holders of Trust Interests from time to time on dates determined by the Creditor Trustee, within a

13

reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to:  (i) make a Pro Rata distribution on account of Disputed Claims that will be converted into Trust Interests if Allowed; and (ii) pay the Trustee's Expenses in full.  By way of limitation, in the event that M&I does not elect to enter into the M&I Settlement, no distributions will be made on account of Class 4 Claims unless and until M&I has received distributions in an aggregate amount equal to its Allowed Claim.

5.8    **Class 5 Interests.**  Holders of Class 5 Interests shall not receive a distribution under the Plan.  Upon the Confirmation Date of the Plan, all Equity Securities in the Debtor will be retired.

## ARTICLE VI

### Treatment of Executory Contracts

6.1    **Assumption and Assignment of Executory Contracts and Unexpired Leases.**

6.1.1    On the Confirmation Date, each executory contract or unexpired lease entered into by the Debtor that is listed on **Exhibit B** to the Plan that has not previously expired or terminated pursuant to its own terms, will be assumed by the Debtor and assigned to the Creditor Trust pursuant to section 365 of the Bankruptcy Code.  Each executory contract or unexpired lease listed on **Exhibit B** will include any modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such contract or agreement, irrespective of whether such agreement, instrument or other document is listed on **Exhibit B**.  Listing a contract or agreement on **Exhibit B** shall not constitute an admission by the Debtor or the Creditor Trust that such agreement is an executory contract or unexpired lease or that the Debtor or the Creditor Trust has any liability thereunder.  The Plan Proponents may amend **Exhibit B** at any time prior to the Confirmation Date.

121272571v5  0913730  54169

6.1.2   To the extent that Claims constitute monetary defaults, the Cure Amount Claims associated with each executory contract or unexpired lease (which is listed in **Exhibit B**) to be assumed pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor or the Creditor Trust, as applicable:  (i) by payment of the Cure Amount Claim in cash on the Confirmation Date; or (ii) on such other terms as are agreed to by the parties to such executory contract or unexpired lease.  If there is a dispute regarding:  (i) the amount of any Cure Amount Claim; (ii) the ability of the Creditor Trust to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed; or (iii) any other matter pertaining to the assumption of such contract or lease, and the assumption and assignment is approved by the Bankruptcy Court, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code will be made within thirty (30) days following the entry of a Final Order resolving the dispute.

6.2   **Contracts Deemed Rejected.**   All other executory contracts or unexpired leases of the Debtor that have not expired by their own terms or been assumed prior to the Confirmation Date shall be deemed rejected pursuant to section 365 of the Bankruptcy Code on the Confirmation Date.

6.3   **Bar Date for Rejection Damages.**   All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Section 6.2 of this Plan shall, unless another order of the Bankruptcy Court provides for a different date, be filed with the Bankruptcy Court no later than thirty (30) days after the Confirmation Date.  The Claims of any Creditor arising from the rejection of executory contracts or unexpired leases pursuant to Section 6.2 of this Plan that fails to timely file a proof of claim shall be released,

15

discharged and forever barred from assertion against the Debtor, the Creditor Trust or their property.

## ARTICLE VII

### Means of Implementation of the Plan

7.1     **Vesting of Assets.**     Subject to the terms of the Plan, upon entry of the Confirmation Order, the Debtor will be restored to full ownership of all property owned by the Debtor and all property of the Estate.  Upon vesting, all such property will be free and clear of all Claims, Liens, encumbrances, charges and other interests, except as otherwise provided in the Plan.  Within seven (7) days of the Effective Date, all assets of the Debtor and its Estate shall then be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan.  The assets include, without limitation, all Cash in the possession of the Debtor (less any Cash paid or to be paid on account of unpaid Allowed Professional Fee Claims), the North Roselle Property, 40,000 shares of common stock in Western Illinois Bancshares, Inc., the Debtor's interest in Stieven Financial Investors, L.P., all Avoidance Actions (excluding Avoidance Actions released under Section 7.15 of this Plan) and Miscellaneous Causes of Action, all rights of the Debtor under the Plan, the Confirmation Order and all other orders entered by the Bankruptcy Court in this Case on or prior to the Effective Date, and all books and records related to the Estate.  The assets shall also include all remaining personal property of the Debtor.  For the avoidance of doubt, all property held for distribution pursuant to the Plan shall be held by the Creditor Trust solely in trust for the holders of Allowed Class 3 and 4 Claims and shall not be deemed property of the Debtor.  Nothing in the Plan, however, shall preclude payment of:  (i) statutory fees under 28 U.S.C. § 1930 to the extent unpaid on the Effective Date; and (ii) the Trustee's Expenses in accordance with this Plan and the Creditor Trust Agreement from any other assets held by the Creditor Trust.  The Debtor is hereby authorized and directed

16

to take such steps as may be necessary or appropriate to confirm such transfer and contribution of its property to the Creditor Trust, subject to oversight from the Creditor Trustee.

7.2     **Creditor Trust Asset Administration.**  The Creditor Trustee shall administer the Creditor Trust Assets pursuant to the Plan and the Creditor Trust Agreement from and after the Effective Date.   The Creditor Trustee shall be responsible for liquidating the Creditor Trust Assets, analyzing and reconciling Claims (including filing and pursuing objections to the extent required), pursuing the Avoidance Actions and Miscellaneous Causes of Action, making distributions of the Net Proceeds to the beneficiaries of the Creditor Trust and all other activities typically related to trust administration.

7.3     **Dissolution of the Debtor.**  Promptly following the Effective Date, the Creditor Trustee will allow the Delaware Secretary of State to involuntarily dissolve the Debtor.

7.4     **Conditions to Confirmation.**   The Confirmation Order shall be reasonably acceptable in form and substance to the Plan Proponents.

7.5     **Conditions to Effective Date.**  The following are conditions precedent to the occurrence of the Effective Date:  (i) the Confirmation Order confirming the Plan, as such Plan may have been modified, shall have been entered by the Bankruptcy Court and be in full force and effect and shall not have been vacated, amended, modified or stayed, and if it is the subject of any appeal, reconsideration or other review, no stay of the Confirmation Order shall be in effect; (ii) the Creditor Trust Agreement, in form and substance satisfactory to the Committee and the Debtor, shall be executed and delivered, and all conditions precedent to the effectiveness thereof shall have been satisfied; (iii) all other documents or agreements necessary to consummate the Plan shall have been delivered or effectuated; and (iv) the Creditor Trustee shall have been appointed by the Plan Proponents upon notice to the Bankruptcy Court.  The Plan

Proponents or the Creditor Trustee, as the case may be, may waive any of the foregoing conditions precedent at any time.

7.6    **Administrative Claims Bar Date.**    All Persons requesting payment of Administrative Claims (Professional Fee Claims or Other Administrative Expense Claims) shall file applications for payment no later than thirty (30) days after the Effective Date. Objections to such applications for payment, if any, must be written, filed with the Bankruptcy Court and served on the applicable parties within forty-five (45) days after such application is filed.

7.7    **Termination of Committee.**    The Committee shall terminate automatically upon the acceptance by the Creditor Trustee of its appointment in accordance with this Plan and the Creditor Trust Agreement on the Effective Date. Upon termination of the Committee, the Committee shall be dissolved and its members shall be deemed released of their duties and responsibilities in connection with the Case or the Plan and its implementation, and the retention or employment of the Committee's counsel shall terminate, except for ministerial duties or any duties imposed pursuant to the Plan (including, without limitation, filing applications for allowance and payment of Professional Fee Claims).

7.8    **Case Administration.**    From and after the Effective Date and continuing through the date that a final decree closing the Case is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Creditor Trustee shall possess the rights of the Debtor for all matters arising in, arising under or related to the Case. In addition to, and without limiting the generality of the foregoing, for all matters arising in, arising under or related to the Case, the Creditor Trustee shall:  (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (ii) have the right to obtain records of, or related to, the Debtor (including, without limitation, bank statements and cancelled

121272571v5  0913730 54169

checks); (iii) be entitled to notice and opportunity for hearing; (iv) be entitled to participate in all matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (v) have exclusive standing to commence Avoidance Actions and Miscellaneous Causes of Action; (vi) be entitled to request the Bankruptcy Court to enter a final decree closing the Case; and (vii) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in this Case.

7.9   **Filing of Additional Documents.**   On or before the Effective Date of the Plan, the Plan Proponents shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including, without limitation, the final Creditor Trust Agreement.

7.10   **Creditor Trustee's Professionals.**   Upon the Effective Date, the Creditor Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators or other Professionals as it may deem necessary, in accordance with the Creditor Trust Agreement, to aid in the performance of its responsibilities pursuant to the terms of the Plan, including, without limitation, the liquidation and distribution of assets of the Creditor Trust.   The Professionals retained by the Creditor Trustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in this Case, and the Creditor Trustee shall be permitted to retain any such Professional in light of the efficiencies implicit in continuity.   The Creditor Trustee's retention of any such Professionals is deemed not to pose any conflict of interest, and no conflict shall exist by virtue of the filing of applications by Professional Persons for allowance of Administrative Claims in accordance with Section 5.1 of this Plan.

121272571v5  0913730  54169

7.11   **Notices.**  Any notice required or permitted to be provided under the Plan shall be in writing and served by either:  (i) certified mail, return receipt requested, postage prepaid; (ii) hand delivery; or (iii) reputable overnight delivery service, freight prepaid, addressed to the following:

The Debtor:

> Thomas G. Wallrich, Esq.
> Hinshaw & Culbertson LLP
> 333 South Seventh Street, Suite 2000
> Minneapolis, Minnesota  55402
> Telephone:  612-334-2594
> Facsimile:  612-334-8888
> E-Mail:  twallrich@hinshawlaw.com
>
> *Counsel for the Debtor*

The Committee:

> Richard S. Lauter, Esq.
> Freeborn & Peters LLP
> 311 South Wacker Drive, Suite 3000
> Chicago, Illinois  60606
> Telephone:  312-360-6000
> Facsimile:  312-360-6520
> E-Mail:  rlauter@freebornpeters.com
>
> *Counsel for the Committee*

The Creditor Trustee:

> _____
> _____
> _____
> _____
> _____
> Telephone:  _____
> Facsimile:  _____
> E-Mail:  _____

7.12   **INJUNCTION.**  EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON AND AFTER THE CONFIRMATION DATE, ALL

121272571v5  0913730  54169

PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD LIENS, CLAIMS OR INTERESTS IN OR AGAINST THE DEBTOR ARE, WITH RESPECT TO ANY SUCH LIENS, CLAIMS OR INTERESTS, PERMANENTLY ENJOINED FROM: (I) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) AGAINST OR AFFECTING THE DEBTOR OR THE CREDITOR TRUST OR ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, THE DEBTOR OR THE FOREGOING CREDITOR TRUST, OR ANY PROPERTY OF ANY SUCH TRANSFEREE OR SUCCESSOR; (II) ENFORCING AGAINST, LEVYING UPON OR ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT) THE DEBTOR OR THE CREDITOR TRUST, OR ANY PROPERTY OF ANY SUCH TRANSFEREE OR SUCCESSOR; (III) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT), COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS WHETHER DIRECTLY OR INDIRECTLY, OF ANY JUDGMENT, AWARD, DECREE, CLAIM OR ORDER AGAINST THE DEBTOR OR THE CREDITOR TRUST, ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO THE DEBTOR OR THE CREDITOR TRUST; (IV) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY LIENS, CLAIMS OR INTERESTS OF ANY KIND

121272571v5 0913730 54169

AGAINST OR IN THE DEBTOR OR THE CREDITOR TRUST, ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, THE DEBTOR OR THE CREDITOR TRUST; (V) OTHER THAN AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN, ASSERTING ANY RIGHT OF SETOFF, SUBORDINATION OR RECOUPMENT OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION DUE THE DEBTOR, THE CREDITOR TRUST, ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR SUCCESSOR IN INTEREST TO, THE DEBTOR OR THE CREDITOR TRUST; AND (VI) TAKING ANY ACTIONS IN ANY PLACE AND IN ANY MANNER WHATSOEVER THAT DO NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THIS PLAN.

7.13 **Term of Bankruptcy Injunction or Stays.** All injunctions or stays provided for in the Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through the imposition of the injunction set forth in Section 7.12 of this Plan.

7.14 **Exculpation and Limitation of Liability.** Neither the Committee, the Creditor Trustee, the Debtor nor any of their respective present members, officers, directors, shareholders, employees, advisors, attorneys or agents acting in such capacity, shall have or incur any liability to, or be subject to any right of action by, any person or entity, for any act or omission in connection with, relating to or arising out of, the Case or the pursuit of confirmation of the Plan, except to the extent arising out of fraud, willful misconduct or gross negligence, and in all respects shall be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

121272571v5  0913730  54169

7.15   **Limited Release With Respect to M&I.**   In the event that M&I elects to enter into the M&I Settlement, as of the Effective Date, the Debtor and Creditor Trustee shall be deemed to have released, waived and discharged M&I from any and all liabilities, obligations, actions, suits, judgments, claims, causes of action and demands, known or unknown, whatsoever at law or in equity, including, but not limited to those arising from, in connection with or related to any Avoidance Actions respecting transfers received by M&I within ninety (90) days prior to the Petition Date.

7.16   **Quarterly Reports.**   The Creditor Trustee shall prepare and file with the Bankruptcy Court a report within thirty (30) days after the conclusion of every calendar quarter setting forth:  (i) all distributions to Creditors during the calendar quarter; (ii) a summary of the Creditor Trust deposits and disbursements during the calendar quarter; and (iii) a summary of the Creditor Trust Assets.   As used in this section, "calendar quarter" shall mean a three month period of time, and the first calendar quarter shall commence on the first day of the first month immediately following the occurrence of the Effective Date.

## ARTICLE VIII

### Modification of the Plan

The Plan and related documents may be altered, amended or modified, jointly, by the Plan Proponents, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE IX

### General Provisions

9.1   **Headings for Convenience Only.**   The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the meanings thereof.

9.2    **U.S. Trustee Fees.**  The Debtor shall continue to pay quarterly fees to the U.S.

Trustee that have accrued up to the Effective Date.  Following the Effective Date, the Creditor

Trustee shall pay quarterly fees to the U.S. Trustee that become payable after the Effective Date.

9.3    **Objections to Claims.**

9.3.1    Prior to the Effective Date, the Debtor shall have authority to file, settle,

compromise, withdraw or litigate to judgment objections to Claims.

9.3.2    From and after the Effective Date, the Creditor Trustee shall have

authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims.  The

Creditor Trustee shall have standing to file objections to Claims even if such Claims were

scheduled by the Debtor as undisputed, liquidated and non-contingent.  The Creditor Trustee

shall file objections to Claims no later than 180 days after the Effective Date (unless extended by

an order of the Bankruptcy Court); provided, however, that the Creditor Trustee may file

objections to claims within ninety (90) days of the filing of an amended Claim.

9.3.3    If the Debtor or Creditor Trustee has objected to a Claim, payment will be

withheld only with respect to the amount actually in dispute, and such objection shall not affect

payments or distributions under the Plan on the undisputed portion of the Claim.

9.4    **Lapsed Distributions.**  Any distribution that has not been cleared within ninety

(90) days of the date of the distribution will lapse.  With respect to any lapsed distributions, the

lapsed distribution will revert to the Creditor Trust and be distributed Pro Rata to the remaining

beneficiaries of the Creditor Trust in accordance with the Plan and the Creditor Trust Agreement.

9.5    **Undeliverable and Unclaimed Distributions.**  If any distribution is returned as

undeliverable, no further distributions to such Creditor will be made unless the Creditor Trustee

is notified in writing of the Creditor's current address.  Upon receipt of the notification, the

24

Creditor Trustee will remit all missed distributions to the Creditor without interest.  All claims for undeliverable distributions must be made on or before the first anniversary of the Confirmation Date of the Plan.  If a claim is not made within that time, all unclaimed distributions will revert to the Creditor Trust and be distributed Pro Rata to the remaining beneficiaries of the Creditor Trust.  Nothing in this Plan will require the Creditor Trustee to attempt to locate any holder of an Allowed Claim.

## ARTICLE X

### Retention of Jurisdiction

This Bankruptcy Court shall retain jurisdiction over this Case for the following purposes:

10.1    Resolution of any and all objections to Claims.

10.2    Determination of all questions and disputes regarding all Causes of Action, controversies, disputes or conflicts, whether or not subject to pending actions as of the Confirmation Date, between:  (i) the Debtor and any other party; (ii) the Creditor Trustee and any other party; or (iii) otherwise under this Plan, the Confirmation Order or any other order issued by the Bankruptcy Court in connection with this Case.

10.3    The correction of any defect and the curing of any omission or inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

10.4    Modification of the Plan after confirmation pursuant to the Bankruptcy Code and the Bankruptcy Rules.

10.5    Allowance of all Claims and applications for payment of Administrative Claims and professional fees and expenses which may be paid by the Debtor or its Estate pursuant to the provisions of the Bankruptcy Code, and resolution of all disputes pertaining thereto.

121272571v5  0913730  54169

10.6    Resolution of any disputes regarding the Creditor Trust or any claim or controversy related thereto.

10.7    Entry of a final order confirming substantial consummation of the Plan and closing the Case.

*[Remainder of Page Intentionally Blank]*

121272571v5  0913730  54169

Dated this 20th day of December, 2010.

MIDWEST BANC HOLDINGS, INC.

By:_____
        Roberto R. Herencia
        Its President and CEO


OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

By:_____
        Its Chair

| | |
|---|---|
| Aaron L. Hammer (ARDC No. 6243069) | Thomas G. Wallrich, Esq. |
| Richard S. Lauter (ARDC No. 6182859) | Joel D. Nesset, Esq. |
| FREEBORN & PETERS LLP | HINSHAW & CULBERTSON LLP |
| 311 South Wacker Drive, Suite 3000 | 333 South Seventh Street, Suite 2000 |
| Chicago, Illinois 60606 | Minneapolis, Minnesota 55402 |
| Telephone: 312-360-6000 | Telephone: 612-334-2594 |
| Facsimile: 312-360-6520 | Facsimile: 612-334-8888 |
| E-Mail: ahammer@freebornpeters.com | E-Mail: twallrich@hinshawlaw.com |
|      rlauter@freebornpeters.com |      jnesset@hinshawlaw.com |

*Counsel to Official Committee*
*of Unsecured Creditors*

                – and –

William J. Connelly (ARDC No. 6185201)
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, Illinois 60601
Telephone: 312-704-3000
Facsimile: 312-704-3001
E-Mail: wconnelly@hinshawlaw.com

*Counsel to Debtor and Debtor-in-Possession*

121272571v5 0913730 54169

## EXHIBIT A

**[To be filed prior to Joint Hearing]**

121272571v5  0913730  54169

## EXHIBIT B – EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED

**-None as of December 20, 2010.  (Note:  Remains subject to revision.)**

121272571v5  0913730  54169